McBRIDE, Judge.
This case involves solely and only a question of fact — whether a house erected by defendants for plaintiff was built in accordance with the plans and specifications and free from defects. Plaintiff claims of McKinney Construction Company, a partnership, and its component partners the sum of $1,392.80, and after a trial of the case below, he recovered judgment for $369.04 and defendants have taken this appeal, which plaintiff has answered praying for an increase in the amount to that sued for.
Plaintiff seeks recovery of the following items:
“12 windows $40.00
Labor.to install 12 windows 29.04
12 Caulk windows 40.00
Concrete to repair car-port 48.00
Labor to pour concrete for car port 32.88
Cement finisher for car port .20.00 Laborers to assist cement finish 32.88 Flooring in house to be replaced 400.00 (Labor and materials)
Paint (Labor and materials) 500.00
Roof (Labor and materials) 60.00
Rental of air compressor 40.00
Rental of air hammer 50.00
Supervision and profit 100.00
$1392.80”
The trial judge believed that the twelve windows, the paint job, and the roof were defective, and the amount of the judgment is ffhe aggregate estimated cost of remedying-those defects.
We agree that the estimate for correcting the windows in the amount of $109.04 is due plaintiff. The top sashes in the process of fabrication were cut from three-eighths of an - inch to one-half inch too short, and in inclement weather rain enters the resulting crevices; during cold weather the drafts affect the heating of the house. The contractor endeavored to rectify the situation by nailing wooden strips to the top sills, but Weidert, cine of the partners of McKinney Construction Company, and Smith, building inspector for the homestead association which ultimately financed the building for plaintiff, both admitted that what was done- amounts to a “patched job.”
Plaintiff claims $500 in globo for interior and exterior painting, which it is contended is imperfect and must be worked over. The homestead representative, Smith, says he examined the paint and found but little wrong with it, but that he believes the specifications for the job are not at all clear as to how many coats of paint should have been applied. We have read much conflicting testimony on the question and our opinion is that the interior was not painted in a workmanlike manner or in accordance with the specifications and plaintiff has good cause for registering his complaints. While $500 is claimed as the amount necessary for correcting all painting, the judge allowed $200 for repainting the interior, which figure was evidently taken from the testimony of Smith, who was defendants’ witness. 'He believed “a couple hundred dollars” should be enough to repaint the woodwork.
Plaintiff was awarded $60 for defects in the roof. The testimony does not show that any defects existed in the roof when the building, was delivered to plaintiff, and if there are any now, ■ such as cracked slates,- which are said to exist, we do not believe this condition is attributable to faulty workmanship.- Furthermore, it ap *414 pears the contractor was never notified before suit was filed, which was about •eighteen months subsequent to the completion of the job, that there was anything wrong with the roof. Although plaintiff’s •counsel addressed communications to the ■contractor regarding other defects, nothing was ever mentioned as to the roof, and we ••are inclined to the belief that the $60 •claimed necessary to replace slates is purely an afterthought, and the item is not to ibe allowed.
The trial court rejected six items totaling $223.76 in connection with the carport. The exact complaint was that the •paved flooring slants toward the house and not in the opposite direction with the result during rainy weather water ac•cumulates near the house. Plaintiff cannot be allowed to recover for this item for the reason that he subsequently enclosed the •carport and now uses it as a room, so ■.therefore the problem of standing water no longer exists.
A substantial amount, to-wit $400, is •claimed for the defective flooring, but the ■evidence is not satisfying that there existed ■such imperfections as plaintiff claims. The flooring is composed of wooden blocks laid on a concrete slab which plaintiff contends -.is uneven causing blocks in each of the rooms to be loose; that to remedy the condition all of the blocks will have to be •removed and the concrete chipped, until level. In April and again in July 1953, some of the wooden blocks were reported •as being loose and Elfer, the flooring subcontractor, dispatched his workmen .to the hopse and they remedied the condition. No further complaints seem to have been received thereafter; the blocks are of the highest grade and were installed by experienced and capable mechanics. Neither Bendish nor Rock, plaintiff’s, experts, examined the floors 'again until about two or three days before the trial and they state •that the only way they could locate a loose block was by tapping the floor with a hammer. In spite of the overwhelming •testimony that the blocks were-of the highest grade, Rock testified they were an inferior product and we simply do not believe this. The item was correctly rejected.
Another detail about which there is much testimony is that a toilet bowl was loose although no specific amount is claimed in connection with that item. Evidently the cost for correcting this supposed defect is included in the $400 claimed to correct the flooring. Plaintiff’s position is that the unevenness in the flooring caused the toilet bowl in the shower room to be loose, but the evidence seems convincing that the only defect was that the mastic, which is a putty-like substance which was placed at the base of the bowl, somehow did not mold correctly which tended to cause the toilet bowl to be loose, but it has been shown by defendants to our satisfaction that the subcontracting plumber, upon receiving complaint, promptly and efficiently corrected the defect.
There is also certain testimony regarding the paved sidewalk which plaintiff contends is pitched toward the house and not outward’ toward the street, which causes rainwater to accumulate in the yard. The defendants have shown that this sidewalk was not included in the specifications for the job and the contractor gratuitously laid the sidewalk, and under these circumstances'plaintiff should not be heard to complain of its shortcomings if there be any.
The trial judge thought the claim was inflated and in that we heartily agree. There is considerable animosity' between pláin-tiff and the partners of McKinney Construction Company and plaintiff cannot be said to have been modest in asserting his ■claim. We' are also inclined to believe, after sifting the evidence, that plaintiff to some degree was non-cooperative when defendants attempted to correct the defects. Plaintiff’s feelings even prompted him to make complaint to : the Better Business Bureau in New Orleans which in turn contacted the contractor. However, in the contractor’s favor, it must be said that the Better Business Bureau found that there were but few defects. In a letter to Me- *415 Kinney Construction Company it made this statement:
“ * * * We think it only fair to your company to have our records indicate that except for the few defects we found — which you state have now been corrected — we believe the workmanship, generally, was good, and that Mr. Picou got value received on his building, as a whole.”
At any rate, the building was defective in two respects, that is the measurements of the upper sashes of the windows were not correct and the interior of the house was given an inferior paint job, and we have made provision for an allowance to plaintiff for the corrective work which will be necessary.
Therefore, the judgment appealed from, is reduced to $309.04 and affirmed. Plaintiff-appellee is to bear the costs of this appeal.
Amended and Affirmed.
JANVIER, J., not participating.